[No. 12750–4–II. Division Two. September 13, 1990.]

JAMES A. MITCHELL, ET AL, *Appellants,* v. KITSAP COUNTY, ET AL, *Respondents.*

*Mark A. Rowley, Lori Salzarulo,* and *Garvey, Schubert & Barer,* for appellants.

*C. Danny Clem, Prosecuting Attorney,* and *Douglas B. Fortner, Deputy,* for respondent Kitsap County.

*Paul R. Cressman, Jr., Kerry S. Bucklin,* and *Short, Cressman & Burgess,* for respondents Eyler, et al.

ALEXANDER, C.J.—James and Jeanne Mitchell appeal the Kitsap County Superior Court's denial of their motion for relief from a judgment. They contend that the judge pro tempore who granted the judgment against them and in favor of Kitsap County and Peninsula Landholders was without jurisdiction to enter the judgment because neither the Mitchells nor their attorney consented to her appointment as a judge pro tempore. We reverse.

In 1987, Kitsap County approved development plans submitted by Peninsula Landholders. Shortly thereafter, James and Jeanne Mitchell filed a complaint in the Kitsap County Superior Court in which they named Kitsap County and Peninsula Landholders (collectively referred to as "respondents") as defendants. In their complaint, the Mitchells asked the court to set aside all approvals of Peninsula's development.

The respondents moved for summary judgment. At that time, the Mitchells were represented by an attorney; however, their attorney did not respond to the summary judgment motion nor did he inform the Mitchells that it had been filed. A hearing on the motion was set by the respondents and the Mitchells' attorney failed to appear at the hearing. The motion was heard by attorney Karlyn Haberly who, ostensibly, was serving as a superior court judge pro tempore, pursuant to an appointment by a Kitsap County Superior Court judge. Although all of the respondents had given consent in writing to Haberly's appointment, neither the Mitchells nor their attorney had manifested their consent to her appointment either orally or in writing. Haberly granted the respondents' summary judgment motion and, in addition, ordered the Mitchells to pay attorney fees of $250 to the respondents.

The Mitchells' attorney did not immediately file an appeal nor did he move for reconsideration. Indeed, the Mitchells did not become aware that a judgment had been entered against them until more than 5 months after the summary judgment order was entered.[1] The Mitchells then obtained another attorney who filed motions for relief from the judgment and for reconsideration. These motions were denied and this appeal followed.

The Mitchells argue on appeal that the judgment against them is void because they did not consent to Haberly's appointment as a judge pro tempore and that she was, therefore, without jurisdiction to grant the summary judgment. They contend that their CR 60(b)(5) motion for relief from the judgment should have been granted. The respondents, on the other hand, argue that (1) the Mitchells and/or their attorney consented to Haberly's appointment as a judge pro tempore, (2) the Mitchells are estopped from arguing lack of consent, (3) the summary judgment should be affirmed on the alternate ground that the Mitchells failed to prosecute their claim, and (4) consent of all parties is not required in summary judgment proceedings.

The Superior Court Civil Rules provide that a motion for relief from judgment may be granted where the judgment is void. CR 60(b)(5). Vacation of a judgment under CR 60(b) is within the discretion of the trial court and a trial court's judgment in this regard will only be overturned where it plainly appears that its discretion has been abused. *State v. Santos*, 104 Wn.2d 142, 145, 702 P.2d 1179 (1988). However, when the trial court is faced with a void judgment, it has no discretion and the judgment must be vacated whenever the lack of jurisdiction comes to light. *Allied Fid. Ins. Co. v. Ruth*, 57 Wn. App. 783, 790, 790 P.2d

---

[1]The Mitchells were out of state at the time the summary judgment was granted and when they returned 5 months later, their attorney notified them that their case had been dismissed.

206 (1990). We must, therefore, determine whether the judgment entered by the pro tempore judge is void.

RCW 2.08.180 provides, in pertinent part, as follows:

A case in the superior court . . . may be tried by a judge pro tempore, who must be a member of the bar, agreed upon in writing by the parties litigant, or their attorneys of record, approved by the court, and sworn to try the case; . . .[2]

■ Karlyn Haberly is a member of the Washington State Bar Association and she was appointed by a superior court judge to serve as a judge pro tempore. Haberly also signed an oath to try this case. Furthermore, the respondents consented to Haberly's appointment. The Mitchells did not, however, consent to her appointment and neither did their attorney. Consent is an essential requirement for the valid appointment of a judge pro tempore. *Burton v. Ascol*, 105 Wn.2d 344, 351, 715 P.2d 110 (1986). Consent must be given in writing or orally in open court. *National Bank of Wash. v. McCrillis*, 15 Wn.2d 345, 356, 130 P.2d 901, 144 A.L.R. 1197 (1942); *State v. Sain*, 34 Wn. App. 553, 663 P.2d 493 (1983). If a party has not consented to the appointment of a judge pro tempore, the appointed pro tempore judge lacks jurisdiction. *Burton v. Ascol, supra.* Without jurisdiction, the entire proceedings before the judge pro tempore are void. *McCrillis*, 15 Wn.2d at 359.

The respondents' argument that the Mitchells consented to Haberly's appointment by not appearing at the hearing on the summary judgment motion is without merit. While our Supreme Court has held that a party may waive the statutory requirement that consent be given in writing, *State ex rel. Cougill v. Sachs*, 3 Wash. 691, 25 P. 446 (1892), no case has gone as far as respondents would have us go.

---

[2]Article 4, section 7 of the Washington State Constitution provides, in pertinent part: "A case in the superior court may be tried by a judge, pro tempore, who must be a member of the bar, agreed upon in writing by the parties litigant, or their attorneys of record, approved by the court and sworn to try the case."

Respondents cite *Burton v. Ascol, supra,* and argue that the Mitchells "excused themselves" from participation in the lawsuit and that, by doing so, they consented to Haberly serving as a pro tempore judge. In *Burton,* the Supreme Court was faced with a case where an attorney for a plaintiff appeared at the beginning of the trial and asked to be excused from the proceedings because "he saw no reason to participate in the trial himself because [the other plaintiff] was actively defending the counterclaim." *Burton,* 105 Wn.2d at 346. There was no objection from any of the attorneys in that case and the trial court granted the request to be excused. Thereafter, all other attorneys appearing in the case, including the attorney for the other plaintiff, stipulated to the appointment of a judge pro tempore. The Supreme Court held that when the attorney excused himself from the case and, in essence, turned the case over to counsel for a coplaintiff, that attorney delegated his client's authority to consent to the appointment of a judge pro tempore. Consequently, the court refused to accept the challenge to the judge pro tempore's jurisdiction after the authority to so object had been surrendered. *Burton,* 105 Wn.2d at 352.

The respondents argue that the Mitchells and their attorney similarly "excused themselves" from the hearing and in doing so, consented to have the case heard by a judge pro tempore. We do not find *Burton* analogous. Neither the Mitchells nor their attorney sought to excuse themselves from the proceedings. Indeed, none of them appeared at the hearing and, consequently, they had no opportunity to affirmatively excuse themselves from the case, as was the situation in *Burton.* In our judgment, a party who fails to appear at a hearing cannot be said to have consented to the appointment of a judge pro tempore by virtue of his or her failure to appear.

This case is more akin to *National Bank of Wash. v. McCrillis, supra.* There, the guardian of an insane man brought an action on behalf of the ward against the ward's wife to annul their marriage. The guardian filed a motion

for default judgment because the defendant failed to appear after being served. The motion was granted by a pro tempore judge. Both parties acknowledged that the defendant did not consent, either orally or in writing, to the appointment of the pro tempore judge. The Supreme Court set aside the default judgment, concluding that the pro tempore judge was without jurisdiction to enter the default judgment because the defendant had not given consent to the appointment.

The respondents argue that *McCrillis* is not applicable because the Mitchells, unlike the defendant in *McCrillis,* appeared in the case. Indeed, they point out that the Mitchells commenced the suit, and were at all times represented by counsel. Respondents' argument blurs the issue. The critical fact is consent to the appointment. Whether the nonmoving party instituted the action, appeared, and was represented by counsel is immaterial if the appointment of a pro tempore judge has not received the consent of all parties.

██ The respondents also argue that the Mitchells consented because their attorney failed to appeal the summary judgment and because they paid $250 attorney's fee. We fail to see how their attorney's actions, following entry of the judgment, can be construed as consent to the appointment of a judge pro tempore. In our opinion, consent must precede appointment. Furthermore, neither of the cases cited by the respondents, *American Fed. Sav. & Loan Ass'n of Tacoma v. McCaffrey,* 107 Wn.2d 181, 728 P.2d 155 (1986), and *In re Marriage of Markowski,* 50 Wn. App. 633, 749 P.2d 754 (1988), support their argument that these actions qualified as consent. In any case, an attorney's conduct does not satisfy the requirement that the client must consent to the appointment of a judge pro tempore. Respondents cite *Hill v. Department of Labor & Indus.,* 90 Wn.2d 276, 580 P.2d 636 (1978) (attorney's knowledge of material facts is imputed to client); *Haller v. Wallis,* 89 Wn.2d 539, 573 P.2d 1302 (1978) (absent a showing of fraud

or collusion, a client is bound by his/her attorney's settlement of his/her claims even though such settlement is contrary to the client's instructions); *Seely v. Gilbert,* 16 Wn.2d 611, 134 P.2d 710 (1943) (an attorney's admission in open court that there is no defense to a motion for dismissal is binding on the client); and *Lambert v. Gillette,* 24 Wash. 726, 64 P. 784 (1901) (client ratified the act of attorney releasing client's judgment lien by failing to object while third party constructed improvements on the property). All of these cases are distinguishable. None of these cases deal with the constitutional and statutory right of a party to consent to the appointment of a judge pro tempore. In addition, all of these cases, with the exception of *Hill,* deal with attorneys who took affirmative steps to bind the client. The Mitchells' attorney took no affirmative steps that could be construed as the giving of consent to Haberly's appointment.

Moreover, "[a]n attorney is without authority to surrender a substantial right of a client unless the client grants specific authority to do so." *In re Marriage of Maxfield,* 47 Wn. App. 699, 707, 737 P.2d 671 (1987). Certainly, consent to the appointment of a judge pro tempore is a substantial right. In our judgment, the Mitchells' attorney was without authority to waive that right.

The respondents argued here, as they did before the trial court, that the Mitchells are estopped from raising the pro tempore judge's lack of jurisdiction because they did not promptly move for reconsideration or appeal, and because they paid $250 in attorney's fees and costs. The Mitchells are not precluded from bringing their CR 60 motion simply because of this delay. Although the rule requires that such motions be made within a reasonable time after the judgment, our Supreme Court has held that a motion to vacate under CR 60(b)(5) may be brought at any time. *In re Marriage of Leslie,* 112 Wn.2d 612, 619, 772 P.2d 1013 (1989).

Furthermore, the payment of attorney's fees is not significant. A movant has not waived the right to vacate a

judgment merely "because he may have complied with other of its provisions which were inconsistent with the relief originally sought." *In re Marriage of Leslie, supra* at 619 (the "other provisions" was the requirement that the movant pay $75 per month in court ordered child support).

█ The respondents contend that the summary judgment should be affirmed on the alternative ground that the Mitchells failed to prosecute their claim as required by CR 41(b)(1). That rule provides that an action shall be dismissed for want of prosecution if it is not set for trial within 1 year after any issue of law or fact has been joined. CR 41 is not self–executing. A violation of the rule must be asserted in the form of a motion to dismiss. CR 41(b)(1). No such motion was filed or heard below and we will not entertain it for the first time here.

█ Finally, the respondents argue that the requirement that the appointment of a pro tempore judge receive the consent of all the parties applies only in cases where the judge pro tempore presides at a trial. Because Haberly dismissed this case upon a motion for summary judgment, they assert, consent of all parties was not a necessity. Although RCW 2.08.180 does speak of cases in superior court being "tried" by a judge pro tempore, we believe that the term trial should be viewed broadly. "A trial is the judicial examination of the issues between the parties, whether they are issues of law or of fact." CR 38. In our judgment, hearings on motions for summary judgment fall within the definition of a trial. Our ruling is consistent with *McCrillis* in which the court found that consent to appointment was required, despite the fact that the judge pro tempore entered a judgment by default. *McCrillis*, 15 Wn.2d at 347.

Reversed.

PETRICH and WORSWICK, JJ., concur.