
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70348-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT MERLE HEATER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED:  July 29, 2013 |
| | ) | |

VERELLEN, J. — Robert Heater appeals his conviction for possession of methamphetamine, arguing that the methamphetamine was discovered as the result of an unlawful search, that his attorney's written consent to have a judge pro tempore preside over the suppression hearing was an inadequate waiver of his right to an elected superior court judge, and that insufficient evidence supported his conviction. Heater fails to present any persuasive argument that he is entitled to appellate relief. We affirm his judgment and sentence.

## FACTS

At approximately 11 p.m. on October 15, 2010, Skamania County Sheriff Deputy Chadd Nolan observed a three-car caravan pass through an intersection. The front car was a pickup truck with nonfunctioning tail lights. The second car was following very closely. Deputy Nolan recognized the pickup as one frequently driven by Robert Heater, an individual he had encountered several times, including the previous week.

Deputy Nolan turned on his emergency lights and drove past the rear car. The second car refused to yield until Deputy Nolan sounded his siren, then pulled over. Heater's pickup made a U-turn before stopping in a driveway. Heater stepped out of his pickup. The second car, driven by Sara Lewis, also stopped.

Deputy Nolan got out of his car and informed Heater he had stopped him because of the nonfunctioning taillights. Heater told Deputy Nolan he knew the taillights were out, and explained that that was the reason the second car was following so closely. Heater gave Deputy Nolan a Washington State identification card, not a driver's license. Officer Nolan ran the defendant's name and learned that his license was suspended.

A short time later, Deputy Russ Hastings and Deputy Summer Scheyer arrived. Deputy Hastings took custody of Lewis, who was arrested for unrelated reasons.

Deputy Nolan arrested Heater. In a search incident to arrest, he found a chemical substance in Heater's pocket. Heater told Deputy Nolan that the substance was something he used in order to pass urinalysis tests. Deputy Nolan's field test of the substance showed a negative result for a controlled substance.

Deputy Scheyer had her drug detection trained dog named Rocket with her. At Deputy Nolan's request, Deputy Scheyer ran Rocket around both cars. When circling Heater's car, the dog alerted near the seam of the passenger door, indicating the odor of cocaine, heroin, marijuana, or methamphetamine. Based upon this, Deputy Nolan sealed Heater's truck with evidence tape and had it towed to a secure yard.

Deputy Nolan prepared an affidavit in support of a request for a warrant authorizing the search of Heater's truck.

2

Deputy Nolan and Deputy Scheyer later searched the truck pursuant to the warrant. Next to the driver's seat, they found what appeared to be a compact disk case in the center console. In fact, it was a set of digital scales with methamphetamine residue. They also found a black purse on the passenger side. The purse contained a bindle of methamphetamine.

## DISCUSSION

### Search Warrant

Heater contends the trial court erred in denying his pretrial motion to suppress the evidence found in his car because the warrant affidavit did not establish probable cause to believe evidence of a crime could be found in the place that was searched. We disagree.

An appellate court reviews a search warrant de novo.[1] The reviewing court is "to operate in a commonsense and realistic fashion," and may draw "reasonable inferences from the facts and circumstances set forth."[2]

There are two necessary probable cause determinations when analyzing a search warrant: probable cause that the defendant is involved in criminal activity and probable cause that evidence of the criminal activity will be found in the place to be

---

[1] In Matter of Detention of Petersen, 145 Wn.2d 789, 799, 42 P.3d 952 (2002); State v. Perez, 92 Wn. App. 1, 4, 963 P.2d 881 (1998).

[2] State v. Helmka, 86 Wn.2d 91, 93, 542 P.2d 115 (1975).

searched.[3] The party attacking the search warrant has the burden of proving its invalidity.[4]

Deputy Nolan's affidavit included the following facts: (1) Rocket signaled that there were drugs in the truck; (2) in the search incident to arrest, Deputy Nolan found a small capsule of a white granular substance that Heater admitted he used to pass urinalysis tests; (3) Deputy Nolan knew Heater had a history with drugs; (4) when speaking with Deputy Nolan, Heater appeared concerned about his truck; and (5) the way Heater turned his truck around and got out before Deputy Nolan approached made the deputy suspicious about the truck's contents.

We conclude that these facts, considered together, support a finding of probable cause sufficient for the magistrate to issue the search warrant. Heater's suspicious behavior concerning the truck, viewed in light of Deputy Nolan's knowledge of Heater's prior drug history and contemporaneous possession of a substance he admitted he used to pass urinalysis tests was highly suggestive of guilty knowledge with regard to something in the vehicle. The fact that Rocket detected the presence of drugs therein further validated Deputy Nolan's concerns. Heater has not met his burden of demonstrating the absence of probable cause as to either his involvement with criminal activity or that evidence of the criminal activity will be found in the pickup, the place the warrant application designated to be searched.

---

[3] State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008).

[4] State v. Fisher, 96 Wn.2d 962, 967, 639 P.2d 743 (1982); State v. Trasvina, 16 Wn. App. 519, 523, 557 P.2d 368 (1976).

Heater argues that the affidavit is nevertheless insufficient since it fails to explain the actual training received by Rocket, and that there was no evidence Rocket could differentiate between legal and illegal substances containing opiates or amphetamine. His argument is not persuasive. The affidavit for search warrant stated Rocket's narcotics detection qualifications as:

> K9 Rocket is trained in the detection of Marijuana, Methamphetamines, Cocaine, and Heroin. He has met the Washington State standards, per Washington Administrative Code, of 200 hours of narcotics training. K9 Rocket is W.A.C. certified and has met Clark County Sheriff's Office K9 standards for narcotics detection. He has been utilized in four narcotics searches and located illegal narcotics one time.[5]

Notably, this information is comparable to that held sufficient in State v. Gross.[6] There, the transcript in support of the warrant stated that the dog was trained for detection of marijuana, hashish, cocaine, and heroin, was "certified by the Washington State Police Canine Association and the Washington State Criminal Justice Training Commission," had been "utilized in cases to detect narcotics on other occasions," and was qualified in both local courts and in federal courts as an "expert narcotics dog."[7] On the briefing provided, Heater does not establish reversible error.[8]

### Judge Pro Tem

Heater's attorney signed a written agreement giving consent to have a judge pro tempore preside over the suppression hearing. Heater argues that reversal is required

---

[5] Clerk's Papers at 38.

[6] 57 Wn. App. 549, 789 P.2d 317 (1990), overruled on other grounds by State v. Thein, 138 Wn.2d 133, 977 P.2d 582 (1999).

[7] Id. at 551-52.

[8] RAP 2.5(a); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

because the record "fails to show that [Heater] knowingly and voluntarily waived his right . . . to have his suppression motion tried before an elected superior court judge."[9] Heater's argument is unpersuasive.

Litigants have a right under article IV, section 5 of the Washington Constitution to have their cases heard in a court presided over by an elected superior court judge.[10] However, under article IV, section 7, a superior court case may be tried by a judge pro tempore, provided that the judge pro tempore is: (a) a member of the bar; (b) agreed upon in writing by the parties litigant or their attorneys of record; (c) approved by the court, and (d) sworn to try the case.[11]

Heater challenges only criterion (b), claiming he did not consent to the judge pro tempore. But article IV, section 7 expressly permits either the parties *or their attorneys* to stipulate to use of a judge pro tempore and thereby waive the right to an elected judge.

Heater cites to State v. Sain for the proposition that an attorney's written consent is insufficient to demonstrate a defendant's knowing and voluntary waiver of the right to an elected superior court judge.[12] In that case, an attorney representing three codefendants consented in writing to trial by a judge pro tempore, but stated the consent was conditioned upon ratification by his clients.[13] In open court, one of the

---

[9] Appellant's Br. at 17.

[10] State v. Robinson, 64 Wn. App. 201, 203, 825 P.2d 738 (1992); State v. Sain, 34 Wn. App. 553, 557, 663 P.2d 493 (1983).

[11] Robinson, 64 Wn. App. at 203 (quoting WASH. CONST. art. IV, § 7).

[12] 34 Wn. App. 553, 663 P.2d 493 (1983).

[13] Id. at 555.

three codefendants, Larry Sain, refused to sign or consent.[14] His attorney argued that without Sain's consent, the court was without jurisdiction to proceed as to his client.[15] The appellate court held that "written consent could not be waived by [Sain's counsel's] unauthorized statements."[16]

The record here contains no indication that Heater objected to having his motion determined by a judge pro tempore. And Heater does not allege that his attorney gave consent without Heater's authorization. Sain is distinguishable and does not control here.[17] Absent the circumstances of a defendant manifesting his opposition to the judge pro tempore, Sain does not require an attorney to obtain his client's consent before signing such a stipulation.[18] Heater fails to demonstrate any basis for appellate relief resulting from the judge pro tempore's role in his case.

*Sufficiency of the Evidence*

Heater argues the record does not contain substantial evidence to support the conclusion that he possessed the methamphetamine found on the scales or in the purse he claims belonged to Lewis. His argument is not persuasive.

---

[14] Id.

[15] Id.

[16] Id. at 557.

[17] State v. Osloond, 60 Wn. App. 584, 586-87, 805 P.2d 263 (1991) (where defendant did not allege his attorney consented to the judge pro tempore without authority but merely argues that neither his signature nor a record of his oral consent is present in the record, Sain "is not on point" and the argument on appeal "is insufficient to challenge the validity of the stipulation to the appointment of the judge pro tempore").

[18] Robinson, 64 Wn. App. at 204.

The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[19]

Here, the jury was properly instructed. Under former RCW 69.50.4013 (2010), to convict Heater of possession of a controlled substance, the State was required to prove that he actually or constructively possessed a controlled substance.[20] The jury was also instructed that in deciding whether Heater constructively possessed the items, it could consider "all the relevant circumstances" including his "ability to take actual possession of the substance," his "capacity to exclude others from possession of the substance," and whether he had dominion and control over the place where the substance was located.[21]

The record contains ample evidence to support Heater's conviction. The prosecution presented evidence that Heater regularly drove the truck and was alone in it, driving, at the time of the stop. There was testimony that Heater behaved in a suspicious manner, turning 180 degrees before pulling over and immediately getting out of the truck to speak with Deputy Nolan. The scale containing residue was found "right directly next to the driver,"[22] and the methamphetamine bindle was found in a bag along

---

[19] State v. Washington, 135 Wn. App. 42, 48, 143 P.3d 606 (2006).

[20] State v. Staley, 123 Wn.2d 794, 798, 872 P.2d 502 (1994) (possession can be actual or constructive); State v. Callahan, 77 Wn.2d 27, 29, 459 P.2d 400 (1969) (constructive possession involves dominion and control over the drugs in question or the premises in which they are discovered.); State v. Partin, 88 Wn.2d 899, 906, 567 P.2d 1136 (1977) (various factors determine dominion and control).

[21] Clerk's Papers at 280.

[22] Report of Proceedings (Oct. 10, 2011) at 210.

with a legal document bearing Heater's name. This evidence was sufficient for a jury to conclude that Heater possessed the methamphetamine, especially when viewed in the light most favorable to the prosecution. There was no error.

Affirmed.

WE CONCUR: